## Case No. 3,352a.

### CRANE v. BOSTON ADVERTISER.

[13 Reporter, 650.] [1]

Circuit Court, D. Massachusetts. 1882.

LIBEL—PRIVILEGE—NEWSPAPER DISCUSSION—CONSTRUCTOR OF PROPOSED RAILROAD.

1. The public has a right to discuss in good faith the public conduct and qualifications of

[1] [Reprinted by permission.]

public men, and in such discussions they are not held to prove the exact truth of their statements or the soundness of their inferences. provided they are not actuated by express malice, or there is a reasonable ground for the statements and inferences.

2. The character of one who is the constructor and manager of a proposed railroad is open to public discussion under the above rule.

Action in damages for an alleged libellous publication. A demurrer was interposed which presented the question whether as matter of law the publication was libellous.

LOWELL, District Judge, in delivering the opinion of the court said: For the purpose of deciding this demurrer it must be assumed that the plaintiff had conceived and begun to carry out a plan for making a railroad from Boston to New York by the consolidation of certain shorter lines and otherwise. and that it was a part of his plan to obtain control of the New York and New England Railroad Company by electing directors favorable to his scheme; that the publication of the article complained of interfered with this plan to his prejudice, and that the statements of the article were not true, but were published in good faith, without express malice, and were, upon reasonable inquiry by the defendants, believed by them to be true. The contention then is, on the part of the defendants. that the subject-matter is one in which the public has an interest, and that, in discussing a subject of that sort, a public speaker or writer is not bound at his peril to see that the statements are true, but has a qualified privilege, as it has been called. in respect to such matters. The modern doctrine, as shown by the cases cited for the defendants, appears to be that the public has a right to discuss in good faith the public conduct and qualifications of a public man, such as a judge, an ambassador, etc., with more freedom than they can take with a private matter, or with the private conduct of any one. In such discussions they are not held to prove the exact truth of their statements, and the soundness of their inferences. provided that they are not actuated by express malice, or that there is reasonable ground for their statements or inferences, all of which is for the jury. Some of the affairs of a railroad company are public and some are private. For instance, the honesty of a clerk or servant in the office of the company is a matter for the clerk and the company only. The safety of a bridge on the line is a subject of public moment. The public. in this sense, is a number who are or will be interested, and yet who are at present unascertainable. All the future passengers on the road are the public in respect to the safety of the bridge, and as they cannot be pointed out you may discuss the construction of the bridge in public, though you thereby reflect upon the character of the builder. If this definition of the public is a sound one, the commonwealth, considered as a stockholder, is not the public, for its interests are intrusted to certain officers, who are easily ascertained; nor would the interests of the share-holders become a public matter merely by reason of their number, unless it were proved that it would be virtually impossible to reach them individually.

If, therefore, the question was merely of the effect of the scheme upon the shares of the New York and New England R. R. Co., a corporation already chartered and organized, I should doubt somewhat whether it would be of a public nature. But, inasmuch as the project was one which affected a long line of road, as yet only partly built, and the consolidation of several companies, it assumes public importance. Perhaps the right of legislative interference may be taken as a fair test of the right of public discussion, since they both depend upon the same condition. The legislature cannot interfere in the purely private affairs of a company, but it may control such of them as affect the public. It cannot be doubted, I apprehend, that the legislatures of Massachusetts and Connecticut would have power to permit, or to prohibit, or to modify. a scheme such as is now in question. It interests the public, consisting of the unascertained persons who will be asked to take shares in it and those through whose lands it may pass, or whose business will be helped or hindered by it, that such a line should be well, and even that it should be honestly, laid out, built, and carried through. For this the character of the plaintiff as a constructor and manager of railroads seems to me to be open to public discussion when he comes forward with so great and important a project, affecting many interests besides the share-holders of one road, and that, therefore, the defendants, or any other persons, have the qualified privilege which attaches to the discussion of public affairs. The distinction is that when a railroad is to be built, or a company to build it is to be chartered the question whether it shall be authorized is a public one; when the company is organized, and the stock is issued. anything which merely affects the value of the stock is private. Demurrer overruled.